STATE *ex rel.* ROBERT HUMPHRIES, Respondent, *vs.* JAMES THOMPSON, Appellant.

1. *Public schools— Warrant for wages of teacher in colored schools payable out of teachers' fund—School law of 1874—Construction of.*—The public school law of 1874 (see Adj. Sess. Acts 1874, p. 147, compare §§ 28, 29, 43, 65, 73, 85, 86, and 90), properly understood, does not create a separate fund for the support of colored schools, upon which warrants for the payment of teachers of such schools must be drawn. But warrants for the payment of teachers of both white and colored schools of the same district are properly drawn upon the teachers' fund of said district.

Under a proper construction of § 90, it was simply intended to provide that the money raised by taxation for building purposes could be applied only to that purpose, and that the money raised by taxation for other purposes could not be paid out for building.

*Appeal from Cooper County Circuit Court.*

*Draffin & Williams,* for Appellant.

I. The law creates a separate fund to be raised by taxation upon the township (and not upon the district), for the support of colored schools. It is a township charge, and the funds of the district cannot be legally used for its support. (See Sess. Acts of 1874, p. 163, § 73 ; also p. 168, § 90.)

*McMillan Brothers,* for Respondent.

I. The only fund on which relator's warrant could be drawn was the teachers' fund (Act 1874, p. 154, §§ 28 and 29). The law nowhere contemplates a colored school fund raised by taxation.

It can make no difference that the treasurer may have kept the money arising from the township taxation for colored schools separate from other school moneys, and that this fund was exhausted. He had no right so to do. It belonged to the school fund of the district; and such fund was not the only one that could be paid out for colored school purposes.

NORTON, Judge, delivered the opinion of the court.

This is a proceeding by mandamus, instituted in the Cooper county circuit court, to compel defendant, treasurer of said county, to pay a warrant drawn upon him by the president and clerk of school district number two, township 48, range 15, in

favor of relator for services as teacher in said district, for the sum of sixteen dollars and forty cents, and payable out of the teachers' fund of said district. The defendant in .his answer to the alternative writ alleges as a reason for the non-payment of the warrant, that the services for which it was drawn were performed by the relator as a teacher of a colored school, that the township fund provided by law for the support of such school had been exhausted, that he could not legally pay it out of the teachers' fund of the district, that the warrant was intended to have been drawn on the colored school fund of the township, and that he did not have any money in his hands applicable to its payment.

The allegations of the return were denied by replication and on the trial of the cause a peremptory writ was awarded against the defendant.

The cause was submitted to the court below on an agreed statement of facts substantially as follows : "For the purposes of this proceeding it is admitted that said warrant was drawn by the legally constituted authorities of said school district upon respondent as county treasurer and treasurer of the school funds of said district ; that the relator was the teacher of a colored school in said district, and that the warrant in question was given him for services as teacher of said colored school ; that at the time of the presentation of said warrant for payment he did not have, nor has he now, any money in the treasury raised by the township of which said district is a part, for the support of colored schools, but that the same has been exhausted, nor any money set apart for the support of colored schools of said district, but that he has now and did have money belonging to the teachers' fund and raised by taxation on said district."

The question then submitted to the court is, whether the law creates a separate fund for the support of colored schools, upon which all warrants for the payment of teachers of colored schools shall be drawn, or whether warrants for the payment of teachers of white and colored schools in the same district shall be drawn upon " the teachers' fund " of said district. Section 85 of the acts of 1874, pages 166–7, provides that the State superintendent shall annually apportion the public school fund applied for the

benefit of public schools, among the different counties, upon the enumeration and returns made to his office, and shall certify the amount, so apportioned, to the State auditor, also to the county clerk of each county, stating from what sources the same is derived, which said sum the county treasurers shall retain in their respective county treasuries from the State funds; and the county clerks shall annually and immediately after their annual settlement with the county treasurer of their respective counties, proceed to apportion, according to the enumeration and returns in their offices, the school funds for their respective counties. In making such distribution, each county clerk shall apportion all moneys collected on the tax duplicate of any district, for the use of schools to such district; all money received from the State treasurer, and all moneys on account of interest of the funds accruing from the sale of sixteenth sections, to the district schools in Congressional townships or parts of townships to which such lands belong, and all other moneys for the use of schools in the county and not otherwise appropriated by law, to the proper district; and shall enter the apportionment so made in a book kept for that purpose, and shall furnish the district clerks, each, with a copy of said apportionment, and order the county treasurer to place such amount to the credit of the district entitled to receive the same. The 86th section of the school law provides that the county clerk shall collect or cause to be collected the fines and penalties, and all other monies for school purposes, and pay the same over to the county treasurer on account of the public school fund.

Under the operation of the above sections all the money applicable to the maintenance of public schools is distributed, and the amounts due from the various county treasurers to the respective school districts in each county of the State ascertained. These amounts, thus ascertained and credited by the county treasurers to the respective districts of their respective counties, can only be disbursed upon warrants drawn by the district clerk, upon the order of the board of directors, for services as teacher, for material purchased for the use of the school, or material or labor in the erection of a school house. All warrants for wages of teacher must be drawn on the teachers' fund.

It is insisted by counsel for defendant, that, inasmuch as section 73 of the school law provides for the establishment of separate schools for colored children in any district where the whole number, by enumeration, exceeds fifteen, and provides that the tax for the maintenance of such schools shall be levied on the taxable property of the township in which such school is located, the legislature contemplated and intended to constitute a separate fund for the payment of teachers of colored children, distinct from the fund for the payment of teachers of white children. Reading this section in connection with sections 28, 29, 85, and 65 we do not think that such was the intention of the legislature. The only effect of section 73 is to provide that colored children shall be taught in separate schools from white children, and the legislature, recognizing the fact that the support of such schools might be too heavy a charge on the district, required that the burden, to some extent, should be borne by the township, and hence a tax for their maintenance is authorized to be imposed on the taxable property of the township. This tax, as well as the tax imposed upon the district, when collected is paid into the county treasury and the treasurer is required by section 85 to credit each district with the amount to which it is entitled, and it thus becomes the money of the district and is to be disbursed as provided in section 28.

The teachers of colored schools are employed by the directors of the district and the compensation to be paid them becomes a debt of the district, and to it alone can such teachers look for payment, and the board of directors could only order for that purpose the district clerk to draw a warrant on the teachers' fund in the hands of the treasurer applicable to the payment of teachers in the district. This fund is made up of the income of State, county, and township funds (which under the terms of the law can only be applied to the payment of teachers), and the tax imposed for that purpose whether it be district or township tax.

If the warrant in question had been drawn on the "colored teachers' fund" as is contended by counsel it should have been, the county treasurer might well have hesitated to pay it, on the ground that the law recognized no such fund.

The legislature have, neither in terms nor by necessary intendment, provided that the tax, provided for the support of colored schools, shall be kept distinct from the funds of the district.

The intention of the legislature to require these funds to be kept separate it is said, may be derived from the language employed in section 90, viz : "that all monies arising from taxation shall be paid out only for the purposes for which they were levied." Section sixty-five provides that the directors may levy a tax, first, for building purposes ; second, a tax for all other purposes. We think a proper construction of section ninety is that it simply intended to provide that the money raised by taxation for building purposes could only be applied to that purpose, and that the money raised by taxation for other purposes than building could not be paid out for building purposes.

If the legislature had intended the funds for the support of colored schools to be kept as a separate and distinct fund it would have been an easy matter for them to have said so and made proper provisions to have accomplished the end. It has not been so expressed in the law, either in terms nor by necessary intendment.

The judgment is affirmed, all the other judges concur.